IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01688-REB-KMT

GOOD KARMA TRADING, LLC,
BLUE ASH TRADING, LLC,
BEECHWOOD FUND, LLC,
JORIE TRADING, LLC,
LARKSPUR TRADING, LLC,
HAWTHORN FUND, LLC,
PORTFOLIO PROPERTIES, INC.,
RIDGEPOINTE FUND, LLC,
SUGARLOAF FUND, LLC, and
WARWICK TRADING, LLC,

      Petitioners,

v.

UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY - INTERNAL
REVENUE SERVICE,

      Respondent.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case comes before the court on "Petition to Quash Summonses" filed on August 9,

2007. ("Pet." [Doc. No. 1]). Defendants Department of Treasury and Internal Revenue Service

filed "United States' Motion to Deny Petition to Quash and for Enforcement of the IRS

Summonses" on October 9, 2007 ("Rsp." [Doc. No. 11]) and on November 1, 2007, "Petitioners'

Response to Motion to Deny and Enforce" was filed ("Reply" [Doc. No. 27]). Subsequent to

receiving court authorization, the United States filed "United States' Surreply" [Doc. No. 41, filed February 12, 2008].

"Petitioners' Motion for an Evidentiary Hearing" [Doc. No. 34, filed January 31, 2008] is also under consideration by the court. The United States filed "United States' Opposition to Petitioners' Motion for an Evidentiary Hearing" [Doc. No. 45, filed February 20, 2008] and Petitioners thereafter filed "Reply in Support of an Evidentiary Hearing" [Doc. No. 48, filed March 13, 2008]. Also addressed herein is "United States' Motion to Quash Petitioners' Discovery Requests and for Protective Order" [Doc. No. 36, filed February 4, 2008], "Petitioners' Response to Motion to Quash Discovery and for Protective Order" [Doc. No. 46, filed February 26, 2008] and "United States' Reply to Petitioners' Response to United States Motion to Quash Petitioners' Discovery Requests and for Protective Order" [Doc. No. 47, filed March 11, 2008].

This Report and Recommendation is submitted pursuant to the Order of Reference dated August 14, 2007. [Doc. No. 2]

I.      BACKGROUND

The court has reviewed the Petition, the parties' briefs and exhibits, together with several affidavits and declarations submitted by the parties. Those documents support the following summary of the operative facts.

The summonses concern the correctness of Forms 1065, Return of Partnership Income, for Petitioners Good Karma Trading, LLC (for the taxable periods January 1, 2003 through December 31, 2004), Blue Ash Trading, LLC (for the taxable periods January 1, 2003 through

December 31, 2005), Jorie Trading, LLC (for the taxable periods January 1, 2003 through December 31, 2004), Larkspur Trading, LLC (for the taxable periods January 1, 2004 through December 31, 2005), Sugarloaf Fund, LLC (for the taxable periods January 1, 2003 through December 31, 2005) and Warwick Trading, LLC (for the taxable periods January 1, 2003 through December 31, 2005). These returns affected the returns for partnership participants who claimed losses from the LLCs returns on their personal tax returns, including Thomas R. Fenton, Thomas J. Agresti and Tammy S. Agresti.

The contested summonses include the following: two summonses (one for each LLC) issued to Thomas R. Fenton concerning his association in Good Karma Trading, LLC and Jorie Trading, LLC; five summonses (one for each LLC) issued to Thomas J. Agresti concerning his association in Blue Ash Trading, LLC, Larkspur Trading, LLC, Sugarloaf Fund, LLC, Warwick Trading, LLC and Portfolio Properties, Inc.; and two summonses (one for each LLC) issued to Tammy S. Agresti concerning her association in Blue Ash Trading, LLC and Larkspur Trading, LLC. The summonses are attached to the Petition and to the Declaration of IRS Revenue Agent Larry Weinger [Doc. No. 12, filed October 9, 2007].[1]

On April 18, 2007 the Internal Revenue Service ("IRS") published a Coordinated Issue Paper concerning "Distressed Asset/Debt Tax Shelters" (hereinafter "DAD"). ("CIP" [Doc. No. 12, Exhibit 4]). The IRS describes a DAD Shelter as:

---

[1]The court notes there are apparently no summonses associated with Beechwood Fund, LLC, Hawthorn Fund, LLC or Ridgepointe Fund, LLC in the Petition; Therefore, it is unclear why these three entities are named as Petitioners.

the use of distressed assets (including creditors' interests in debt) to shift economic losses from a tax indifferent party to a U.S. taxpayer. A distressed asset/debt ("DAD") transaction typically involves the use of a limited liability company, taxed as a partnership, to shift losses among partners entering and exiting the partnership. A foreign party ("FP") owns a distressed asset with a substantial built-in loss. The foreign party contributes the high-basis, low-value asset to the partnership, which makes no election under I.R.C. Section 754 and thus keeps the high basis in the asset. The partnership typically, but not always, contributes the asset to another partnership. Then the foreign party transfers within a short period of time its interest in the upper-tier partnership to a U.S. taxpayer, who may be acting through a pass-through entity. The U.S. taxpayer contributes other property or money to the upper-tier partnership in order to create basis in the taxpayer's partnership interest. The lower-tier partnership sells (or exchanges) the high-basis, low-value asset to another entity related to the promoter, resulting in a significant tax loss that is allocated to the U.S. taxpayer/partner. Then the U.S. taxpayer claims the significant tax loss that has passed through the partnership to offset other income or gain. The effect is that the U.S. taxpayer is benefitting (sic) from the built-in economic losses in the foreign party's distressed asset when the US taxpayer did not incur the economic costs of that asset. The U.S. taxpayer is also benefitting (sic) from claimed deductions for fees paid to the promoter for structuring the transaction.

CIP at 1. If the DAD tax shelter participant cannot substantiate the basis of the distressed assets, or the transaction does not otherwise comply with all provisions of the Internal Revenue Code, or does not satisfy judicial doctrines such as step-transaction and economic substance, the IRS will disallow the resulting deductions and could assert a penalty unless the tax shelter participant can show that he or she acted with reasonable cause and good faith. *Id.* Therefore, when investigating suspected DAD transactions, not only do investigators have to prove the applicability of the DAD CIP in general, but must also investigate the U.S. taxpayer's food faith and knowledge.

As part of the IRS nationwide investigation of DAD tax shelters, the IRS is conducting investigations on two tracks: (1) the correctness of returns filed by entities which passed on

losses to United States taxpayers; and (2) the correctness of the returns filed by those United States taxpayers, and their correct tax liabilities. According to the sworn Declaration of IRS Revenue Agent Larry Weinger ("Weinger Decl."), the summonses at issue in this case concern investigation of the first track – the correctness of returns filed by the entities passing on the losses to individual taxpayers. Weinger Decl. [Doc. No. 12] at ¶ 4. The persons to whom the summonses are directed are members of the second class, U.S. taxpayers claiming losses. *Id.*

The IRS summoned Mr. Fenton and Mr. and Mrs. Agresti in connection with its examination of Petitioner LLC's tax returns to testify and produce documents which the IRS anticipates will shed light on DAD tax shelters suspected to be involved. *Id.* at ¶¶ 9-23. The IRS issued summonses to Mr. Agresti in connection with an investigation into John E. Rogers's role as the organizer, seller, and manager of the DAD tax shelters, to determine whether those transactions were "potentially abusive tax shelters" or "reportable transactions," and whether Rogers is liable for penalties for his role in those transactions. Pet. at ¶ 18; Rsp. at 3.

The IRS claims that its investigation has shown John E. Rogers created, managed, and promoted DAD transactions in which foreign entities that do not pay U.S. taxes contributed purportedly "distressed" aged accounts receivables and post-dated checks obtained from Brazilian retailers to U.S. limited liability companies. Rsp. at 5. Sometimes, several tiers of entities were involved. *Id.* The IRS claims that Rogers created these LLC entities and continues to manage many of them. Each of the petitioners in this case are Illinois limited liability corporations primarily doing business in Brazil. Pet. at ¶¶ 1-10. The IRS claims the investigation has shown that Rogers, along with others including Mr. Agresti, then sold interests

in the LLC entities to tax shelter participants.  Rsp. at 5; Weinger Decl. at ¶ 25.  Further, the IRS

states that many of the limited liability companies designated an entity controlled by Rogers,

called Jetstream Business Limited ("Jetstream"), as their tax matters partner under 26 U.S.C.

§ 6231(a)(7).  Weinger Decl. at ¶ 27.   Jetstream, the IRS claims, is owned by Petitioner

Portfolio Properties, Inc., and Rogers is the sole shareholder of Portfolio.  *Id.*  Because Portfolio

is an S-corporation, any losses reported on its returns resulting from the DAD transactions are

passed through to Rogers's personal return.  *Id.*  Other participants in the petitioner LLCs,

including Thomas R. Fenton, Thomas J. Agresti and Tammy S. Agresti were likewise, according

to the IRS, claiming DAD losses on their personal tax returns.  *Id.* at ¶¶ 25, 28, 29.

## II.    JURISDICTION

### A.    UNITED STATES IS THE ONLY PROPER PARTY RESPONDENT

Petitioners have captioned their Petition to Quash Summonses against "United States of

America, Department of the Treasury – Internal Revenue Service."  Neither the Department of

the Treasury nor the IRS is a suable entity.  Title 26 U.S.C. § 7422(f)(1) ( "A suit ... [for

recovery of any tax alleged to have been erroneously or illegally assessed or collected] ... may be

maintained only against the United States and not against any officer or employee of the United

States...."); *Castleberry v. Alcohol, Tobacco & Firearms Division, Treasury Dept. .,* 530 F.2d

672, 673 n. 3 (5th Cir.1976);  *Pace v. Platt,* 228 F.Supp .2d 1332, 1335 (N.D. Fla. 2002) (same);

*Krouse v. U.S. Gov't Treas. Dept. Int. Rev. Serv.,* 380 F.Supp. 219, 221 (C.D. Cal. 1974) (when

Congress authorizes one of its agencies to be sued *eo nomine*, it does so in explicit language, or

impliedly because the agency is the offspring of such a suable entity).   An agency of the United

States may not be sued *eo nomine,* absent the express consent of Congress. *Arnett v. United States,* 845 F. Supp. 796, 798 (D. Kan. 1994).

Regardless of whether the United States is named as a party in a complaint, a suit is considered one against the United States "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, ... or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620 (1963) (internal citations and quotations omitted); *Aviles v. Lutz,* 887 F.2d 1046, 1048 (10th Cir. 1989).

Therefore, Plaintiff's suit may not be maintained against the Department of Treasury or the IRS and the United States is the only proper party to this action.

## B.   JURISDICTION OF THE U.S. DISTRICT COURT

The Court has jurisdiction and authority to issue orders compelling individuals and entities to comply with the summonses that the IRS issues. If the recipient of a summons fails to comply, the United States must seek judicial enforcement under Internal Revenue Code §§ 7402(b), and 7604(a). 26 U.S.C. §§ 7604(a) and (b). Section 7402(b) provides that, "[i]f any person summoned under the internal revenue laws to appear, to testify, or to produce books, papers or other data, the district court ... shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data." Section 7604(b) of the Internal Revenue Code also provides,

> [i]f any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the district court of the United States for the district in which such person resides or may be found shall have

jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

The Tenth Circuit has interpreted these statutes in *United States v. City National Bank & Trust Co.*, 642 F.2d 388 (10th Cir. 1981), stating, "Section 7602 of the Internal Revenue Code authorizes the Commissioner of Internal Revenue to summons books and records that may be relevant or material in determining a person's income tax liability...." *Id.* at 389.

Title 26 U.S.C. § 7609(h)(1) provides that jurisdiction to determine motions to quash IRS summonses lies in the United States district court for the district where the party summoned resides or is found. *See Abell v. Sothen*, 214 Fed. Appx. 743, 756-7 (10th Cir. 2007). These Internal Revenue Code sections confer authority upon the United States district courts to issue orders compelling compliance with IRS summonses. *See United States v. Stoesser*, 2008 WL 713672, *4 (D.N.M. 2008).

The judiciary's role in these proceedings, however, is not to supervise or direct the IRS's exercise of its summons power, but rather to guard against abuses of that power. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

## III.    IRS SUMMONS ENFORCEMENT POWERS

Pursuant to I.R.C. §§ 7801 and 7802, Congress has charged the Secretary of the Treasury and the Commissioner of the IRS with the responsibility of administering and enforcing the Internal Revenue Code. *See Lonsdale v. United States*, 919 F.2d 1440, 1447 (10th Cir. 1990). Section 6201 of the Internal Revenue Code authorizes the Secretary to make "inquiries, determinations, and assessments of all taxes including interest, additional amount, additions to

the tax, and assessable penalties imposed by the Code." Also, I.R.C. § 7602 grants to the IRS

"expansive information-gathering authority" to encourage effective tax investigations. *United*

*States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984). In fact, "[e]nforcement of a summons

is generally a summary proceeding to which a taxpayer has few defenses." *United States v.*

*Derr*, 968 F.2d 943, 945 (9th Cir. 1992).

When a summons is challenged the IRS must establish a *prima facie* case for

enforcement of a summons by satisfying five requirements: (i) the IRS is conducting the current

investigation for legitimate purposes; (ii) the information the IRS seeks in its summons may be

relevant to the purposes of the investigation in that the testimony and/or documents sought may

assist in determining a taxpayer's tax liability, current ability to pay and the best available means

for collecting those taxes; (iii) the IRS does not already possess the requested information (while

it has some data for the years in question, it is insufficient to complete income tax returns); (iv)

the administrative steps required by the Internal Revenue Code were followed; and (v) a criminal

referral has not been made to the Department of Justice. *See Powell*, 379 U.S. at 57-58; *United*

*States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 (1978); *United States v. Scholbe*, 664 F.2d 1163

(10th Cir. 1981).

The burden upon the IRS to make its *prima facie* case is a slight one because the statute

must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly

restricted. *United States v. Kis,* 658 F.2d 526, 536 (7th Cir. 1981). "The requisite showing is

generally made by affidavit of the agent who issued the summons and who is seeking

enforcement." *United States v. Garden State Nat'l Bank,* 607 F.2d 61, 68 (3d Cir. 1979); *Kis*,

658 F.2d at 537; *United States v. Balanced Financial Mgmt., Inc.,* 769 F.2d 1440, 1443 -1444

(10th Cir. 1985).

**A.**     **THE UNITED SATES HAS MADE A *PRIMA FACIE* CASE FOR ENFORCEMENT OF THE IRS SUMMONSES**

**1.**     **The IRS is Conducting the Current Investigation for Legitimate Purposes.**

In the present case, the IRS is examining the correctness of tax returns filed by the LLC

entities which do not have an entity level income tax liability but, instead, show items of income,

deduction, gain and loss flowing through to the returns of the LLC participants including

Thomas R. Fenton, Thomas J. Agresti and Tammy S. Agresti. The petitioners claim, in general

terms, that the purpose of issuing the summonses is not to examine the tax liability of the

petitioners, but rather to harass and intimidate them. Although an IRS agent's motive can be a

factor in determining whether an investigation is being pursued in good faith, *LaSalle*, 437 U.S.

at 316 n. 17, in this case the IRS as an entity, outside of any agent's individual motive, has

determined that DAD tax transactions bear further investigation. The CIP issued by the IRS on

this topic concludes,

> If a partnership is formed or availed of in connection with a DAD transaction the principal purpose of which is to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of subchapter K, the Service may recast that transaction, as appropriate, to achieve results that are consistent with the intent of subchapter K. This will result in disallowance of the built-in loss to the partnership.

CIP at 6. Further the CIP states, "The Service should assert the appropriate component(s) of

the Section 6662 accuracy-related penalties against a U.S. taxpayer who claimed losses from a

10

DAD transaction unless the taxpayer is able to establish reasonable cause and good faith under Section 6664(c)(1) and the applicable regulations." *Id.* at 18. The CIP then describes in detail the various topics which must be investigated and addressed by the agent to determine "reasonable cause" and "good faith" with respect to these transactions. *Id.*

That the DAD participants may perceive the IRS investigation as harassing is irrelevant to the fact that the investigation is a completely legitimate and an appropriate exercise of the IRS' statutory responsibility with respect to the issuance of summonses during an investigation. The proper inquiry is whether the IRS, <u>as an institution</u>, acted in good faith. *LaSalle,* 437 U.S. at 316. The petitioners claim that certain communications between investigating agents, and Rogers and his attorney, prove harassment is the true motive for the investigation. The court, having reviewed the affidavit of Sweta Shah (Reply, Exhibit A, [Doc. No. 27-2] hereinafter "Shah Aff'd."), finds that it is neither harassing nor threatening to set forth the specific provisions of the IRS Code which require timely response to information requests and to remind an attorney that, if proven, providing deliberately incomplete or delayed responses regarding any matter being investigated by the Internal Revenue Service is not without consequence. *Id.* at ¶ 4. Likewise, advising recalcitrant taxpayers under investigation or audit by the IRS that penalties can be incurred, is not unreasonably threatening since such is a true statement. *See, e.g.*, *2121 Arlington Heights Corp. v. IRS*, 109 F3d 1221 (7th Cir. 1997) (restaurant unsuccessfully claimed that agent's summons to a phone company for information on years after the years under audit was irrelevant, invaded the privacy rights of its employees, would ruin its business, and was issued in bad faith to force the restaurant to concede its assessed tax liability).

2.	**The Information Sought in the Summonses May Be Relevant to the Purposes of the Investigation and the Testimony and/or Documents Sought May Assist in Determining a Taxpayer's Tax Liability, Current Ability to Pay and the Best Available Means for Collecting Those Taxes.**

The IRS claims, Mr. Agresti, as someone who promoted the sale of interests in the LLC entities to tax shelter participants, as well as the beneficiary of losses generated by the transactions through his wife's interest in Petitioners, should have information about the receivables contributed to the limited liability companies, the value of the receivables at the time of contribution and thereafter, and the motive and business purpose for engaging in the transactions. Rsp. at 5.

In *Arthur Young & Co.*, 465 U.S. at 814, the Supreme Court explained that Title 26 U.S.C. § 7602's language indicates that an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in court since the language "may be" reflects Congress's intention to allow the IRS to obtain items of limited potential relevance to the ongoing investigation without reference to its admissibility. *Id.* As a discovery tool, a § 7602 summons is critical to the IRS's investigative and enforcement functions.

Under Section 7602, the IRS is authorized to issue a summons for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." *Id.*; *Balanced Financial Mgmt., Inc.*, 769 F.2d at 1443.

The summonses issued in connection with the examination of Petitioners' tax returns request testimony and documents that generally fall into four categories concerning the "distressed debt" transactions that resulted in reported tax losses by Petitioners in the above referenced tax years: (1) documents related to the anticipated tax benefits of those transactions; (2) engagement letters, invoices, and billing records for legal, management, or tax advice; (3) correspondence and notes of discussions with the entity at issue in each summons; and (4) documents related to legal or tax advice with respect to those transactions. Weinger Decl. at ¶ 2. These documents are clearly related to the legitimate tax investigation and the factors which must be investigated as outlined in the CIP.

### 3. The IRS Does Not Already Possess the Requested Information.

The Declaration of IRS Revenue Agent Weinger states specifically, under oath, that the IRS does not possess the summoned information. Weinger Decl. ¶¶12, 17, 22. The sworn statement of the revenue agent who issued the summons typically satisfies the *prima facie* showing required pursuant to a *Powell* element. *Balanced Financial Mgmt., Inc.* 769 F.2d at 1443 -1444; *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993); *United States v. Gilleran,* 992 F.2d 232, 233 (9th Cir. 1993). The IRS acknowledges that "Petitioners, and certain third parties, have provided other documents to the IRS in the past" (Rsp. at 13). However, the IRS maintains the specific summoned documents have not yet been produced.

In response, the petitioners attach a number of documents which they state have already been provided to the IRS. Reply at 34-35. The petitioners caution that the list of documents is illustrative only and state that compliance costs associated with productions to the IRS to the

13

date of the filing had "exceeded $750,000." Pet. at 9. The petitioners describe several further productions which have been made, including Mr. Rogers's diaries. They also state that Rogers has met with IRS agents on a number of occasions. However, notably absent is the particularized contention that the third-parties who received the summonses at issue have produced the requested documents. It is not unreasonable to assume that, although a form or copy of a certain document may have been produced, the same or similar document produced by another party might be relevant. The second copy could contain additional notes, for instance, or there may be evidentiary significance in the mere fact of possession of the document by a certain entity or individual. The fact that Rogers, who is not the summonsed party in this case, has produced a number of documents may or may not be of significance with respect to these entities and these particular third-party recipients of summonses. The unpublished case relied upon by the petitioners to support their objection to document production is not helpful. The summonses sought to be quashed in *Racca* were <u>additional</u> summonses directed to the <u>same</u> party who had previously provided documents and evidence pursuant to a more broadly worded prior summons. *Racca v. United States*, 2007 WL 1108872. *1-2 (W.D. Wash. 2007). Here, the factual premise for the summonses at issue differs sharply.

Petitioners have presented no sworn testimony in contravention of Agent Weinger's Declaration that the IRS does not possess the documents sought by the summonses. Therefore, the court accepts Agent Weinger's Declaration as true and concludes that the information requested is not in the possession of the IRS.

**4.** **Any Failure to Follow the Administrative Steps Required by the Internal Revenue Code is Not Prejudicial and Not Determinative of the Validity of the Summonses.**

Petitioners allege that the IRS failed to comply with administrate procedures in that the IRS failed to provide proper notice prior to serving the summons on the third-parties (26 U.S.C. § 7602); the IRS failed to provide reasonable notice to the petitioner of contacts with other persons (Internal Revenue Manual § 4.10.1.6.12.2); the IRS failed to seek documents "voluntarily" from petitioners (I.R.M. § 25.5.1.4); the IRS refused to allow sampling of documents (IRS Directive TNT 67-8, March 14, 2002); the IRS issuance of IDRs were "shot-gun" (I.R.M. §4.10.2.9.3); and, the information is available through the standard audit procedure.

The requirements for issuance of summonses pursuant to *Powell* should not be read to require a *per se* bar to enforcement of IRS code requirements for small variations in policy or procedure. *Ironwood Trading, LLC v. United States,* 2008 WL 817066, *5 (M.D. Fla.. 2008) (this is a companion case to the case at issue before this court, involving the same issues and general nature of the summonses). *See United States v. Bank of Moulton*, 614 F.2d 1063, 1066 (5th Cir. 1980) (the court must evaluate the seriousness of the procedural violation under all the circumstances including the government's good faith and the degree of harm imposed by the unlawful conduct.) The *Ironwood* court stated,

> [i]n rejecting the elevation of "form over substance," the court set forth the following test: 'The correct approach for determining whether to enforce a summons requires the court to evaluate the seriousness of the violation under all circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct.' *Bank of Moulton*, 614 F.2d at 1066; *see also United States v. Payne*, 648 F.2d 361 (5th Cir. 1981).

*Id.*

None of the deficiencies complained of by Petitioners are substantive. This investigation is long term and as the petitioners readily admit has involved ongoing meetings, document production and negotiations. Failure of a precise form of "notice" is certainly a complaint of form over substance. The remaining claims are conclusory argument, not true deficiencies.

Where the petitioners fail to show that they suffered prejudice as a result of the claimed administrative deficiencies, even if true, there is no basis for quashing the summonses. *Id*; *see e.g., Katrych v. IRS*, 1996 WL 774558, *2 (S.D. Fla. Dec. 11, 1996). In accordance with the *Ironwood* court, this court finds that the petitioners have failed to show any prejudice as a result of the claimed administrative deficiencies and the claimed deficiencies do not affect the validity of the summonses. *See* Treasury Regulation §601.506(a); *Smith v. United States*, 478 F.2d 398 (5th Cir. 1973).

**5.    A Criminal Referral Has Not Been Made to the Department of Justice.**

The phrase "Justice Department referral" is a term of art and includes a recommendation by the Secretary of the Treasury to the Attorney General to conduct a grand-jury investigation, or criminal prosecution, of the taxpayer for any offense connected with the administration or enforcement of the internal revenue laws, and any request under I.R.C. § 6103(h)(3)(B) for the disclosure of any return or return information relating to the taxpayer to the Department of Justice. I.R.C. § 7602(d)(2)(a). There has been no allegation that a criminal referral has been made in this case to the Department of Justice and no evidence presented to support such an allegation.

### 6.    The IRS has Made the Requisite *Prima Facie* Showing

This court finds that the IRS has established a *prima facie* showing for enforcement of the  summonses as set forth in Section I, *infra*, pursuant to *Powell*, 379 U.S. at 57-58, by showing that the current investigation is for legitimate purposes, the information sought may be relevant to the purposes of the investigation, the IRS does not already possess the requested information from the summonsed party, the administrative steps have either been followed or the failure to follow did not create prejudice for the petitioners and a criminal referral has not been made to the Department of Justice.

### B.    PETITIONERS HAVE NOT REBUTTED THE UNITED STATES' *PRIMA FACIE* SHOWING SUPPORTING ENFORCEMENT OF THE IRS SUMMONSES

Once the IRS's *prima facie* showing has been made, the burden then shifts to the taxpayers to "establish any defenses or to prove that enforcement would constitute an abuse of the court's process." *United States v. Genser,* 582 F.2d 292, 302 (3d Cir. 1978).  The burden on the petitioners in this case is a heavy one.  *Garden State Nat'l Bank,* 607 F.2d at 68.  Petitioners must "prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties." *United States v. Moll,* 602 F.2d 134, 138 (7th Cir. 1979). The taxpayer must do more than just produce evidence that would call into question the Government's *prima facie* case.  The burden of proof in these contested areas rests squarely on the taxpayer.  As the Third Circuit observed, "*LaSalle* may not have closed the door in the taxpayer's face, but neither did it leave much more than a very slight opening." *Garden State*

*Nat'l Bank*, 607 F.2d at 70; *Balanced Financial Mgmt., Inc.,* 769 F.2d at 1444; *Kis,* 658 F.2d at 538-39.

The Tenth Circuit has held that "[i]n responding to the Government's showing, it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice. Allegations supporting a 'bad faith' defense are ... insufficient if conclusionary." *Balanced Financial Mgmt.* at 1444 (*quoting Garden States Nat'l Bank* at 71). Furthermore, the court continued, "if . . . the taxpayer cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Id.*

The petitioners argue that the summonses constitute an abuse of process because they are issued for the purposes of harassment and that the investigation has already used multiple investigative tools, including interviews, IDRs and FDRs. Petitioners also complain that the summonses are being used by the IRS as an improper vehicle to obtain pre-litigation discovery. Petitioners allege  the IRS possesses an ulterior motive –  to collect information pursuant to its plan to target John Rogers as a tax shelter promoter or, in the alternative, to harass Petitioners into giving up their claimed deductions. Petitioners aver as well that the IRS is using the summonses to improperly extend the statute of limitations. Finally, Petitioners content that the summonses violate their First Amendment rights to free speech and redress of grievances and their Fifth Amendment right to due process.

### 1.    Abuse of Process/Harassment

The IRS summonses would constitute an abuse of process "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *LaSalle,* 437 U.S. at 316.

In *LaSalle,* the Supreme Court articulated the standard of "good faith" to be met in an IRS enforcement proceeding as the IRS must use the summons authority "in good-faith pursuit of the congressionally authorized purpose of § 7602." *Id.* In addition, *LaSalle* recognized that the good faith standard "requires that the Service not abandon in an institutional sense . . . the pursuit of civil tax determination or collection." *Id.*

This court has already concluded the summonses were not issued for purposes of harassment, but rather were issued to further the legitimate investigation of DAD transactions and the possible disallowance of certain tax deductions.  (See Section III (A)(1) and (2) herein.)

### 2.    Ulterior Motive

Petitioners claim the summonses are an attempt by the IRS to "avoid the more restrictive discovery rules in United States Tax Court in favor of its much broader summons power."  Reply at 24.  The support offered for this allegation is that Agent Weinger said "the auditors were being guided by district counsel who planned to litigate regardless of the result of the audit." *Id.* at 25. The IRS disputes this statement was made.  Weinger Decl. at ¶ 40.  Whether the statement was made accurately or repeated, agents engaging in investigations should be encouraged, not

discouraged, from seeking counsel of their attorneys on the proper course and scope of any investigation. As stated by the court in another companion case to this one in the Northern District of Illinois, *Good Karma LLC v. United States*, Case Nos. 07 C 2697, 07 C 3920, 07 C 4740, and 07 C 5505, "There is no prohibition from IRS agents speaking with district counsel during an examination, and Petitioners present no other facts supporting their allegations." *Id.* at *9. *See also*, *Ironwood Trading,* 2008 WL 817066 at *7.

Petitioners contend also that the IRS's motive is "to target John Rogers as a tax shelter promoter or to harass petitioners into giving up their lawful deductions." Reply at 40. The petitioners offer no proof of such a plan other than self-serving affidavits and declarations from Rogers and Shah. It is the duty and responsibility of the IRS to investigate possible wrongdoing by taxpayers or persons advising taxpayers. The petitioners have presented no evidence that the information requested in the summonses is irrelevant to the IRS's legitimate examination of the petitioner's tax liabilities and whether deductions pursuant to DAD transactions should be allowed and/or whether certain penalties may be appropriate in connection with the various transactions.

Finally, Petitioners argue that the IRS issued the summonses for the "improper purpose of extending the statute of limitations on examining petitioner tax returns." Reply at 41. However, the petitioners have presented no argument that it would be an abuse of process for the IRS to issue a summons in order to toll the applicable three year audit period when a recalcitrant taxpayer refuses to provide documents substantiating claimed deductions. *Ironwood Trading* at *7. Additionally, this argument is largely inapposite because the statute of limitations involved

in these summonses did not expire until many months after the summonses were issued, or for those that would be expiring or had expired, the notices of deficiency had been previously filed. Rsp. at 17-18; Weinger Decl. at ¶ 45.

### 3.  Constitutional Violations

Petitioners claim the summonses impinge upon their First Amendment rights to freedom of speech and right to petition the government for redress of grievances and their Fifth Amendment right to due process.  The Supreme Court has, on many occasions, upheld the validity of summons enforcement procedures set forth in the Internal Revenue Code.  *See, e.g.*, *Powell*, 379 U.S. at 57-58; *LaSalle*, 437 U.S. at 318; *Arthur Young*, 465 U.S. at 814; *United States v. Euge*, 444 U.S. 707, 715-716 (1980); *United States v. Bisceglia*, 420 U.S. 141, 146 (1975).  The factual arguments supporting Petitioners position that their First Amendment rights have been infringed are frivolous.  Similar contentions have been repeatedly rejected by the IRS and the federal courts.  *United States v. Rowlee,* 899 F.2d 1275, 1279 (2d Cir. 1990) ("The consensus of this and every other circuit is that liability for a false or fraudulent tax return cannot be avoided by evoking the First Amendment[.]")  *See also, United States v. Ramsey,* 992 F.2d 831, 833 (8th Cir. 1993) (determining that the taxpayer had "no First Amendment right to avoid federal income taxes ..."); *United States v. Collins,* 920 F.2d 619, 629 (10th Cir. 1990) (rejecting a taxpayer's argument that the IRS lacked jurisdiction over him because he did not reside on federal land).

Petitioners' argument that the summonses constitute a deprivation of property without due process of law in violation of the Fifth Amendment is not accompanied by evidence

suggesting they have standing to assert such a claim with respect to summonses issued to third-parties. Issuance of a third-party summons does not give rise to any due process concerns because due process is satisfied by 26 U.S.C. § 7609(b)(2) which creates a statutory avenue for judicial review of IRS summonses. *Mollison v. United States*, 481 F.3d 119, 125 (2d Cir. 2007). In fact, Petitioners are exercising their due process rights at this very moment by institution of this action.

Petitioners have failed to present specific facts from which the court may infer wrongful conduct by the IRS. I find therefore that the petitioners have failed to meet their heavy burden of establishing bad faith, an abuse of process or a constitutional violation, by the IRS.

## IV. THE PETITIONERS ARE NOT ENTITLED TO AN EVIDENTIARY HEARING OR FURTHER DISCOVERY.

Having established that the IRS has made the requisite *prima facie* showing and that the petitioners have not successfully met their heavy burden to show that enforcement would constitute an abuse of the court's process, the district court should dispose of the proceeding on the papers before it without an evidentiary hearing. *Garden State Nat'l Bank*, 607 F.2d at 71.

The Tenth Circuit, in *Balanced Financial Mgmt., Inc.,* 769 F.2d at 1445, concurs that under circumstances similar to those presented in this case, Petitioners are not entitled to either an evidentiary hearing or to pre-hearing discovery. *Id.* (An evidentiary hearing as suggested by *Powell* is not automatic and courts have agreed that the taxpayer must make some threshold showing refuting the Government's *prima facie* case or must factually support an affirmative defense to be entitled to the hearing); *see Kis,* 658 F.2d at 539 n. 39. As noted by the Tenth

Circuit, "this test. . . more accurately reflects 'Congress's concern that summons enforcement proceedings be concluded rapidly, while at the same time the taxpayer is protected from summonses that may be an abuse of process." *Id. See also United States v. Scholbe*, 664 F.2d 1163 (10th Cir. 1981); *United States v. Security Bank and Trust Company,* 661 F.2d 847, 851 (10th Cir. 1981); *United States v. Traynor,* 611 F.2d 809, 810 (10th Cir. 1979).

The standards governing pre-hearing discovery are similarly stringent. Discovery in summons enforcement proceedings is available "only in extraordinary situations." *Balanced Financial Mgmt., 769 F.2d* at 1445. In fact, pre-hearing discovery is only permissible where the taxpayer asserts one or more of the following defenses: (1) at the time the summons was issued, the IRS had already recommended criminal prosecution of the taxpayer to the Department of Justice; (2) at the time the summons was issued, the IRS had made an institutional commitment to recommend criminal prosecution; or (3) at the time the summons was issued, the IRS had agreed to become an information-gathering agency for other law enforcement agencies. *Security Bank & Trust Co.*, 661 F.2d at 850. Even if a Petitioner asserts one or more of these defenses, the right to pre-hearing discovery is not automatically granted. "[T]he taxpayer must make a substantial preliminary showing before even limited discovery need be ordered." *Balanced Financial Mgmt.* at 1445 (*quoting United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42-43 n. 9 (2d Cir. 1978)). Having failed to assert any of the recognized defenses whereby pre-hearing discovery may be granted, further discovery is not warranted. Petitioners have neither successfully refuted the government's *prima facie* case nor factually supported an affirmative

defense. Accordingly, Petitioners have failed to satisfy the standards governing both evidentiary hearings and pre-hearing discovery.

It is therefore respectfully **RECOMMENDED** that:

1.     Petitioner's Motion for an Evidentiary Hearing [Doc. No. 34] be **DENIED**.

2.     The United States' Motion to Quash Petitioners' Discovery Requests and for Protective Order [Doc. No. 36] be **GRANTED**.

3.     The Petition to Quash Summonses [Doc. No. 1] be **DENIED**.

4.     The Clerk be directed to CLOSE this case and terminate any pending motions.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of May, 2008.

BY THE COURT:

s/ Kathleen M. Tafoya
KATHLEEN M. TAFOYA
United States Magistrate Judge